UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HALLMARK INSURANCE
COMPANY,

               Plaintiff,

v.                                           Case No. 6:16-cv-2063-Orl-37GJK

MAXUM CASUALTY INSURANCE
COMPANY,

               Defendant.
_____

## ORDER

This matter is before the Court on the following: (1) Maxum Casualty Insurance Company's Motion to Dismiss Hallmark's Amended Complaint, Alternatively Motion to Strike, and Incorporated Memorandum of Law (Doc. 15), filed November 22, 2016; (2) Hallmark Insurance Company's Response to Maxum Casualty Insurance Company's Motion to Dismiss Hallmark's Amended Complaint, Alternatively Motion to Strike (Doc. 26), filed December 9, 2016; and (3) Maxum's Reply in Support of Its Motion to Dismiss (Doc. 36), filed December 30, 2016. For the reasons set forth below, the Court finds that the motion filed by Defendant Maxum Casualty Insurance Company is due to be denied.

# I.   BACKGROUND[1]

The parties to this diversity action are two insurance companies who shared a common insured—Southern Pride Transport, Inc. ("**Insured**"). (*See* Doc. 10.) Defendant Maxum Casualty Insurance Company ("**Maxum**") was the Insured's primary insurer under Policy Number TRK6020865-01 ("**Primary Policy**"), which provided one million dollars of coverage ("**Primary Limits**") (*see* Doc. 10, ¶6; Doc. 10-1), and Plaintiff Hallmark Insurance Company ("**Hallmark**") was the Insured's excess insurer under Policy Number 66HX121C45 ("**Excess Policy**"), which provided two million dollars of coverage ("**Excess Limits**"). (*See* Doc. 10, ¶7; Doc. 10-2.)

On **February 8, 2013**, an accident occurred ("**Accident**"), which potentially triggered both policies. (*See* Doc. 10, ¶¶9–25.) Specifically, a vehicle driven by Andrea Salickram ("**Injured Party**") collided with a tractor trailer ("**Trailer**"), which was owned by the Insured and negligently operated by the Insured's driver, Travis Crawford ("**Driver**"). (*See id.*) When the Accident occurred, the Trailer had inoperable "reflective lights" on top and defective rear defective reflective tape. (*See id.* ¶¶9, 10, 13, 14.) The Insured promptly reported the Accident to Maxum, and Maxum hired an attorney to represent the Insured ("**Insured's Attorney**"). (*See id.* ¶¶11–12.)

---

1 The facts set forth in this Order are taken from the Amended Complaint and are construed in the light most favorable to Hallmark. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The true facts of the action may be entirely different. (*See* Doc. 15, p.7, n.7 (disputing "the accuracy and truthfulness" of Hallmark's factual allegations, denying causation, and contending that "Hallmark trampled over attorney client privilege, work product, [and] confidentiality").)

Following the Accident, the Injured Party sought compensation from the Insured and the Driver for her injuries ("**Claim**") by: (1) providing documentation to Maxum indicating that the Claim "had a value well in excess" of the Primary Limits; and (2) demanding that Maxum tender the Primary Limits to her within twenty days. (*See id*. ¶17; Doc. 10-4 ("**Pre-Suit Demand**").) Maxum did not comply with the Pre-Suit Demand, and it failed to give Hallmark notice of the Claim and the Pre-Suit Demand. (*See* Doc. 10, ¶¶18, 19.)

After the Pre-Suit Demand expired, the Injured Party filed a personal injury action against the Insured and the Driver ("**PI Action**"). (*See id*. ¶20; Doc. 10-5.) The Injured Party also served two **$750,000.00** proposals for settlement on the Insured and the Driver respectively in **August 2015** ("**PFS Demands**"). (*See* Doc. 10, ¶23; Doc. 10-7.) Again, Maxum failed to settle and failed to notify Hallmark of the Claim or the PFS Demands. (*See* Doc. 10, ¶¶24, 25.)

Maxum did not notify Hallmark of the Claim until **April 11, 2016**, which was five days after the Injured Party made another offer to settle the Claim for **$2,500,000.00**. (*See id*. 10, ¶¶26–28; Doc. 10-8 ("**April Demand**").) The April Demand "was set to expire on April 20, 2016," but that deadline was extended to May 20, 2016. (*See id*. ¶29.) Before the extended deadline expired, the Claim finally settled during mediation for **$2,400,000.00** ("**Settlement**"). (*See id*.) The Settlement was memorialized in a written agreement (Doc. 15-2 ("**Agreement**")) and a release (Doc. 15-1 ("**Release**")), which provided that:

> (1)    the Injured Party received **$1,000,000.00** from Maxum and **$1,400,000.00** from Hallmark ("**Hallmark Payment**");

(2)     the PI Action was dismissed with prejudice, and the Injured Party "completely and fully" released the Driver, the Insured, and the Insured's insurers "from any and all current or future claims, obligations, liability claims or responsibility arising out of" the Accident (*see* Doc. 15-1, pp. 1, 3); and

(3)     the Insured and Hallmark reserved "all rights and remedies they may have against Maxum arising out of [the PI Action,] including claims for bad faith" (*see* Doc. 15-2, ¶13).

Neither the Release nor the Agreement included an assignment of any bad faith claim from the Insured to Hallmark. (*See* Docs. 15-1, 15-2.)

In this action, Hallmark asserts a single "Common Law Bad Faith – Equitable Subrogation" claim against Maxum under Florida law to recover the Hallmark Payment ("**BFES Claim**"), pre-judgment interest, costs, and attorneys' fees ("**Fees Demand**"). (*See* Doc. 10.) Hallmark also requests a jury trial ("**Jury Demand**"). (*See id.*) Maxum moved to dismiss Hallmark's Amended Complaint (*see* Doc. 15, pp. 1–23 ("**Motion to Dismiss**")), and it alternatively requested that the Court strike the Fees and Jury Demands. (*See id.* at 24–25 ("**Motion to Strike**").) Hallmark responded (Doc. 26), Maxum replied (Doc. 36), and these matters are now ripe for adjudication.

## II.     LEGAL STANDARDS

Complaints filed in this Court must comply with the minimum pleading requirements set forth in Rule 8 by including "short and plain" statements of a claim showing that the plaintiff "is entitled to relief" and "the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a). Failure to comply with these pleading requirements

provides grounds for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The failure to join an "indispensable party" under Rule 19 is another ground for dismissal under Rule 12(b)(7). Pursuant to Rule 12(f), courts may strike a matter from a pleading if such matter is "redundant, immaterial, impertinent, or scandalous."

## III.    DISCUSSION

### A.    Motion to Dismiss

Maxum argues that the Court should dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) because: (1) Hallmark failed to obtain an assignment of rights from the Insured before the Release "extinguished" the Claim and terminated the PI Action (Doc. 15, pp. 1–20 ("**Assignment Argument**")); and (2) the Insured suffered no damages as a result of Maxum's purported bad faith (*id.* at 21–22 ("**Damages Argument**")). These arguments turn on a discrete question of Florida law—whether an excess insurer may sue a primary insurer for bad faith when: (1) the mutual insured has not assigned its rights against the primary insurer to the excess insurer; and (2) due to the execution of a complete release, all claims against the mutual insured have been extinguished. (*See* Docs. 15, 26, 36). This question was answered in the affirmative in *Vigilant Insurance Company v. Continental Casualty Company.* 33 So. 3d 734 (Fla. 4th DCA 2010). Thus, the Court must reject Maxum's Assignment and Damages Arguments if *Vigilant* controls. (*Compare* Doc. 26, pp. 5–6, *with* Doc. 15, p. 10, n.8.)

In identifying controlling Florida law, the Court must first adhere to "case precedent from the Florida Supreme Court." *See Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864 (11th Cir. 2014). Absent such precedent, the Court must apply

decisions of Florida's "intermediate appellate courts" unless a persuasive indication exists that the Florida Supreme Court "would decide the issue otherwise." *Id.*

*Vigilant* was decided by the Fourth District Court of Appeal of Florida, and the Florida Supreme Court relied on *Vigilant* in part when answering questions certified by the U.S. Circuit Court of Appeals for the Eleventh Circuit in *Perera v. United States Fidelity and Guaranty Company*, 35 So. 3d 893, 900–01 (Fla. 2010). *Perera* summarized the circumstances "in which an insured or the third-party claimant, either *on its own behalf or as the insured's assignee*, may bring a common law third-party bad-faith claim against an insurer for damages sustained as a result of the insurer's bad faith." *Id.* at 899 (emphasis added). One such circumstance "involves *a claim not of the insured or the third-party claimant, but of the excess carrier*, which may bring a bad-faith claim against a primary insurer by virtue of equitable subrogation." *Id.* at 900 (emphasis added). Noting that the position of an excess insurer "is analogous to that of the insured when only one insurer is involved," *Perera* recognized an excess insurer's "right to 'maintain a cause of action . . . for damages resulting from the primary [insurer's] bad faith refusal to settle [a] claim against their common insured.'" *See id.* (quoting *U.S. Fire Ins. Co. v. Morrison Assurance Co.*, 600 So.2d 1147, 1151 (Fla. 1st DCA 1992); *see also Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So. 2d 272, 275 (Fla. 1st DCA 1980) (noting that the insured "in effect substitutes an excess insurer for himself").[2]

---

[2] The *Ranger Insurance Company* decision—which was also cited in *Perera*—held that a primary insurer's duty of good faith to its insured in the settlement negotiation process includes an obligation to an excess insured "to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial

Despite *Perera* and *Vigilant*, Maxum vehemently argues that Florida law precluding bad faith claims by excess insurers has been settled for "over three decades" (*see* Doc. 15, p.7), and the Court should simply disregard *Vigilant* as "an outlier decision that is irreconcilable" with *Fidelity & Casualty Insurance Company of New York v. Cope*, 462 So. 2d 459 (Fla. 1985) and two decisions from the Eleventh Circuit—*Federal Insurance Company v. National Union Fire*, 298 F. App'x 845 (11th Cir. 2008) and *Auto-Owners Insurance Company v. American Yachts, Limited*, 271 F. App'x 888 (11th Cir. 2008)). (*See* Doc. 15, pp. 9–10; Doc. 36, pp. 2–4.) The Court disagrees.

Far from an outlier, *Vigilant* is consistent with other decisions from Florida's intermediate appellate courts. *See Morrison*, 600 So. 2d at 1151; *Ranger Ins.*, 389 So. 2d at 275; *Gen. Acc. Fire & Life Assurance Corp. v. Am. Cas. Co. of Reading, Pa.*, 390 So. 2d 761, 765 (Fla. 3d DCA 1980) (affirming judgment for excess insurer against primary insurer in claim for bad faith refusal to negotiate and settle a claim asserted against a mutual insured).[3] Further, *Cope* is not controlling here because it did not concern a claim brought by an excess insurer and it did not even mention the doctrine of equitable subrogation.

_____

exposure to the insured." *See Ranger Ins. Co.*, 389 So. 2d at 275.

　　3 *See also Progressive Am. Ins. Co. v. Nationwide Ins. Co.*, 949 So. 2d 293, 294 (Fla. 1st DCA 2007) (explaining that primary insurers owe excess insurers a duty of good faith that "stems from equitable subrogation principles, in that, in the event of an award over the primary insurer's policy limits, the excess insurer incurs the same duty to pay that the insured would have in the absence of an excess insurer, and correspondingly the excess insurer has the same right to sue the primary insurer for bad faith as the insured"); *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095, 1096 (Fla. 1st DCA 1997) ("[A]n excess insurer is entitled to maintain a common law bad faith action against a primary insurer."); *Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 558 So .2d 1048, 1050 (Fla. 2d DCA 1990) ("Equitable subrogation is an appropriate form of relief in a dispute between a primary and excess insurer arising from the payment of a claim by the excess insurer.").

*See Cope*, 462 So. 2d at 461; *see also Vigilant*, 33 So.3d at 738–39 (distinguishing *Cope*). The two Eleventh Circuit cases cited by Maxum also do not control here because both were unpublished decisions.[4]

Because Maxum has not persuaded the Court that the Florida Supreme Court would reject *Vigilant* based on *Cope* or any other bad faith case brought by a third party other than an excess insurer, the Court must adhere to the *Vigilant* holding and the *Perera* dicta, both of which plainly support Hallmark's BFES Claim.[5] *See Vigilant*, 33 So. 3d at 739 (reversing trial court's dismissal of excess insurer's bad faith claim); *see also Perera*, 35 So. 3d at 900–01); *Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, 603 F. App'x 898, 901 (11th Cir. 2015) (quoting *Perera*). Accordingly, the Court rejects Maxum's Assignment and Damages Arguments.

The Court also rejects Maxum's remaining argument that the Amended Complaint should be dismissed pursuant to Rule 12(b)(7) because Hallmark failed join the Insured and the Insured's Attorney ("**Third Parties**") under Rule 19. (*See* Doc. 15, pp. 22–23.)

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345, n.7 (11th Cir. 2007). Here, *American Yachts* and *Auto-Owners* are not persuasive because both are inconsistent with and were decided two years before *Vigilant* and *Perera*. *See Fed. Ins. Co.*, 298 F. App'x at 849; *American Yachts*, 271 F. App'x at 889.

[5] Further, the Court finds that the Amended Complaint sets forth a plausible BFES Claim based on the factual allegations that: (1) Maxum knew about the Excess Policy "by as early as January of 2015" (*see* Doc. 10, ¶22); (2) Maxum also knew that the Claim exposed the Insured to liability in excess of the Primary Limits and within the Excess Limits (*see id.* ¶¶23–25); (3) despite its knowledge concerning the Claim and the Excess Policy, Maxum delayed in notifying Hallmark of the Claim while rejecting the Pre-Suit and PFS Demands (*see id.*); and (4) Maxum's bad faith in handling the Claim and responding to the Pre-Suit and the PFS Demands unnecessarily caused Hallmark to make the Hallmark Payment (*see id.* ¶¶29–33).

According to Maxum, the Third Parties are "necessary" to this action and for "judicial efficiency and economy, it was erroneous for Hallmark to omit" them. (*See id*. at 23.) Hallmark counters that the Third Parties are not "necessary" parties, and even if they were necessary, "nothing prevents Maxum from utilizing third party practice to join [them] as permitted by [Rule 14(a)]." (Doc. 26, p. 15.)

Under Rule 19, dismissal is permitted for non-joinder only when "a person who is required to be joined if feasible cannot be joined," and "in equity and good conscience, the action should [not] proceed among the existing parties." Fed. R. Civ. P. 19(b). Here, Maxum has not argued that the Third Parties cannot be joined and it has not addressed the equitable factors which must be considered by the Court under Rule 19(b). As such, its argument under Rules 12(b)(7) and 19 fail, and the Motion to Dismiss is due to be denied.

### B.   Motion to Strike

The proper grounds to strike matter from a Complaint is identified in Rule 12(f) — redundancy, immateriality, impertinence, or scandal. Without mentioning any of these grounds, and in just three paragraphs of its 25-page Motion to Dismiss, Maxum contends that the Court must strike: (1) the Fees Demand because "Hallmark is not an assignee of" the Insured (Doc. 15, p. 24 (citing *Cont'l Cas. v. Ryan Inc. Eastern*, 974 So. 2d 368, 377 (Fla. 2008)); and (2) the Jury Demand because the BFES Claim is an equitable claim (*see id*. at 24–25). In a similarly abbreviated fashion, Hallmark counters that: (1) Florida recognizes an "implied assignment" of attorneys' fees claims (Doc. 26, p. 15); and (2) it is entitled to a jury trial because it seeks a legal remedy in this action (*id*. at 16). Because the

-9-

parties' briefing is insufficient and ignores the requirements of Rule 12(f), the Court finds

that the Motion to Strike is due to be denied.[6]

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Maxum Casualty Insurance

Company's Motion to Dismiss Hallmark's Amended Complaint, Alternatively Motion to

Strike, and Incorporated Memorandum of Law (Doc. 15) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of March, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

[6] The Court will address the jury question and attorney's fees disputes if and when they
are raised in an appropriate procedural posture.